Good morning, Your Honor. My name is Niels Frenzen. I represent Petitioner Hernan Delgado. I'd like to start by addressing several of the jurisdictional issues that present in this case. The first one I'd like to discuss is the one addressed by this Court in its 2001 holding in Motsup v. INS, where the Court, a panel of this Court, held there was no jurisdiction to review the merits of a Board of Immigration Review. Do both parties agree that that's been overruled? Our position is that the Supreme Court's decision earlier this year in Kukana has been overruled. The government seems to agree. The panel, excuse me, Your Honor? The government seems to agree. The government does agree, yes. I would suggest not wasting time on that. Very good, Your Honor. The one thing I would say about that If there are questions on this point, you can be sure you'll get them. Thank you, Your Honor. There's no doubt that the Court has jurisdiction to review our legal challenges to our arguments that the particularly serious crime determinations should not include non-aggravated felonies. Petitioner Delgado has been convicted of three non-aggravated felony DUI convictions, and we believe for both withholding purposes and asylum purposes, those should not be, as a matter of law, be found to constitute particularly serious crimes. We believe that's the case in the withholding context due to the plain language of the statute. We're focusing on the final two of the final three sentences in the withholding particularly serious crime bar for withholding purposes, and it is our position that the second sentence explicitly refers back to the previous sentence, and the Court should not give a – excuse me. The language reads, For purposes of Clause 2, an alien who has been convicted of an aggravated felony for which the alien has been sentenced to an aggregate term of imprisonment of at least five years shall be considered to have committed a particularly serious crime. The previous sentence – Even if we agreed with you that the second sentence refers only to aggravated felonies, why does the first sentence limit the Attorney General's discretion to address particularly serious crimes? We believe the – this is a complete definition of particularly serious crimes. It doesn't say it's a definition, and it only says it shall be considered. It didn't say it shall be considered exclusively, and the sentence could have been constructed very differently. It should have been – the phrase should have been flip-flopped in some way to tell us that this was intended to be a definition of particularly serious crimes. Instead, it appears to be inclusive language. Well, but I think our response to that, Your Honor, is we have – you have to take into consideration the second sentence. And the second sentence says, The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of the sentence imposed, an alien has been convicted of a particularly serious crime. We think that notwithstanding the length of the sentence imposed makes clear that Congress intended for this particularly serious crime definition to only extend to aggravated felony – aggravated felonies. The DIA concluded that what the second sentence did was that it gave back to the Attorney General discretion with respect to aggravated felonies so that he was not limited to aggravated felonies at a five-year sentence. So he – on a case-by-case basis, he could – he could say, well, this is an aggravated felony. It wasn't quite five years, but I consider it to be a particularly serious crime in context anyway. I mean, the trouble with that interpretation in – on the part of the Board of Immigration Appeals, Your Honor, is that then the language that I was referring, not – in the second sentence, notwithstanding the length of the sentence, becomes superfluous. There is no reason for that language to appear in the second sentence if it was not Congress's intent to limit particularly serious crimes to aggravated felonies. Does – does your interpretation require that we take the third sentence, and that becomes the defining proposition for – I think it's three. For B-3 – B-3-B-3. Yeah. There are two sentences – or there are three sentences in that paragraph, Counselor, and it seems to me that what you're suggesting is that the first two sentences are the definition of B-3-B-2, but then we have to look at there is one more clause that says, for purposes of Clause 4, an alien who is described shall be considered, and really what it's saying is that as to B-3-B-3, that the only thing that we need to look at is terrorism. But it would seem to me unreasonable to suggest that B-3-B-3 only relates to terrorism. I – I – I understand what – what Your Honor is – is pointing to. I don't think I have a good response to that. Well, then, if in fact there isn't a good response, doesn't that again lead us to the idea that B-3-B-2 is really the overall category and the clauses you're really talking about are just subsets, not definitions? I would agree with that, but for the language in the second sentence, the second – Well, but the second sentence really just says, we generally believe that it ought to be an aggravated felony for a term of imprisonment of at least five years. However, A.G., if you don't believe that that five years is really that important, you can, in your discretion, get rid of it. So what it's really saying is the overall is, having been convicted, then there's a subset, convicted of an aggravated felony for five years, and then there's a subset of that that says, and A.G., in your discretion, you can even get rid of that. I don't have any further response to what Your Honor is saying. Our reading of the statute differs from what we've seen. All right. If your reading of the statute differs from that, can I say the statute then is ambiguous? If the statute is ambiguous, Your Honor, and we recognize that all of the circuits that have considered this question have decided in that manner, with the exception of the Third Circuit, which obviously did not have the Board's decision in matter of NAM before it at the time, we think the Board's interpretation is not reasonable and not permissible. Well, not reasonable simply because you disagree with it, because it seems to me that if we come to ambiguous and we're talking about matter of NAM, I'm trying to figure out why it is that that would not be given Chevron deference. We think it should not be given Chevron deference for two primary reasons, Your Honor, one of which is the longstanding case law identified by the Board of Immigration Appeals beginning in matter of Frontescue that indicates that particularly serious crimes are more serious crimes than the other crime, the other bar that we were just speaking about, the serious nonpolitical crime. And we think when you look at the crimes that have been recognized as serious nonpolitical crimes by the Board of Immigration Appeals and by other courts, crimes that consist of terrorist bombings, burning of buses, assaulting of passengers, killing of a police officer, selling of human organs on the black market, when one looks at that list of crimes that the courts have identified as serious nonpolitical crimes, and if one accepts, as we argue, that a particularly serious crime needs to be more serious than a serious nonpolitical crime, we think the Board's interpretation in NAM is unreasonable for that reason. Well, that sounds good, but if you look at the type of crimes that are listed in the aggravated felonies, it doesn't really sound like that the aggravated felonies that are listed in the statute are that aggravating. I mean, one of them would be failure to appear for court, and another would be perjury, and another would be an attempt at one of those aggravated felonies. So if you look at the aggravated felonies and you look at what they suggest, it doesn't seem to me that one could particularly suggest that what the BIA did in the matter of NAM is outside its reasonable interpretation for Chevron deference. I think, Your Honor, our response to that is that Congress has spoken directly to this issue. It is concerned that the definition of aggravated felony has expanded greatly since it first came into the Immigration Act in 1988, and there are many aggravated felonies now that are not serious crimes, and the Congress has spoken to that issue by, and this goes back to my earlier argument, by only putting those aggravated felonies per se into the definition of particularly serious crime if there's an aggregate sentence of five years or more. And so Congress has spoken to this issue. Congress has expressed this concern. In your view, no crime for which the punishment, the actual punishment, under that less than five years would qualify? That's a great question. I just want to understand your position. Our position is that for an aggravated felony with a sentence of less than five years, the Board has the discretion to determine whether or not that's a particularly serious crime using the matter of frontescue factors as they've evolved over the years. Counsel, as I see it, the Fourth, Tenth, and Second Circuits disagree with your view. I'm talking about Gao, NAM, and Neth Aghani. Can you help us either distinguish those cases or tell us why we shouldn't follow them? In regard to the deference to the Board of Immigration Appeals, we think they were wrongly decided. But other than saying that, I don't think there's anything I can particularly point to. NAM and Gao both have petitions for certiorari pending before the U.S. Supreme Court that are challenging their holdings, but obviously those are good holdings in their respective circuits at the present time. We're going to Judge Callahan. Well, I was just going to, assuming that since both parties seem to be encouraging the Court and seem to feel that, based on Kukana, we are required to overrule Mt. Sioux going to that place, then we can review the decision on whether the multiple DUIs is a particularly serious crime, correct? Yes. Kukana clarifies that issue in regard to reviewing particularly serious crime in the withholding of removal context. We think it also goes to the asylum context, but there's an independent basis for jurisdiction in the asylum context as well. Now, the three-judge panel found that the BIA was wrong in making that determination, correct? The three-judge panel found, Judge Canby, writing for the majority, found that the board was incorrect in regard to the particularly serious crime determination in the asylum context. The three-judge panel decided it did not have jurisdiction because of Mt. Sioux to decide the merits of the particularly serious crime question in the withholding context. Well, if we overrule Mt. Sioux, then is the standard of review abuse of discretion? The standard of review in both contexts would be abuse of discretion, yes. It is a discretionary determination. It's just not a discretionary determination conferred by statute. I have difficulty in terms of saying that the BIA abused its discretion on that in that it's, you know, I don't know what's a more serious crime than driving under the influence, particularly in the factual predicate here. Mr. Delgado, he was previously injured as he injured someone else in his DUI, so they were not minor DUIs. They're multiple, and they're aggravated by high speeds and all of that. And, you know, obviously in places like, you know, statistically, you're more likely to be killed by a drunk driver than you are by a murderer or a gangbanger or anything else or a perjurer or anything along those lines. So can you respond to that? Your Honor, we do not mean to – I mean, in California, if you have a prior DUI, you can be charged, and you kill someone, you can charge a second-degree murder, and we're upholding convictions on that. I have no basis for minimizing the seriousness of the DUI convictions. Our argument is that they do not rise to the level of particularly serious crime. I think there are two general reasons for that, one of which, again, and this goes to why we believe the Board's decision in Delgado's case is – or the NAM decision is unreasonable and should not be given deference – is because the Board of Immigration Appeals has long held that serious nonpolitical crimes are more serious. And when you compare DUI, serious that they may be, to the list of cases that the Board of Immigration Appeals has found to be serious nonpolitical crimes, we think it's clear that DUI – Does it not get deference as to that? I mean, you may believe that, and maybe I do too, that drunk driving is not as bad as sale of organs, but I can't say that somebody who feels otherwise would have to be – you know, would be unreasonable. As Judge Carlin points out, most of us are not in danger, like in our lives, to have our organs sold in the black market, but there is some reasonable chance that one of, you know, people in this courtroom, that somebody will have their life touched by a, you know, in an adverse way by a drunk driver. So the frequency of the crime or the likelihood that it will – it's a matter of both severity, it seems to me, and the likelihood of creating a danger to society, both of those seem to count. And if you take both of those together, why doesn't the – if you give the board deference, why isn't it plausible for them to say, look, this is a very – this is the kind of crime that can affect anybody, it can affect school children, it can affect babies, it can affect adults, it can – and happens with a great deal of frequency. I mean, it happens far too often, and this is not somebody who, you know, just is caught, you know, ambling home from a dinner party, having had one drink too many. This is somebody who goes out there and drives at 85 miles an hour while drunk and actually injures people. I mean, that's a different animal than, you know, somebody who's had three glasses of wine instead of two over dinner, right? I understand your point, Judge Kaczynski. In regard to your specific question, should deference be afforded to the agency, my response to that would be no, it should not be, because NAM did not address the DUI question, and the immigration judge's decision finding in Delgado's case, finding that DUI constituted a particularly serious crime, is not entitled to deference under Chevron because it's an immigration judge decision, and likewise the BIA decision, which is a single board member's decision in Delgado's case, is not entitled to deference. If we have a precedential decision at some point from the BIA addressing this issue, I think deference would probably be required under – in that circumstance. However, you will admit, I guess, that under 8 U.S.C. 1101, Congress designated the DUI as a serious criminal offense for purposes of inadmissibility. So, in other words, we don't let them in if they have a DUI, and under 1182A2E, serious criminal offense could include the DUI. So it seems to me a little bit uneasy to suggest, especially on discretionary review, that if we can keep them out for a DUI, we can't kick them out for a DUI. Well, is this a – I mean, that's the state of the law, 8 U.S.C. 1101, pretty clear. Is this a question of kicking somebody out, or is it a question of returning somebody to face persecution? And is there a difference between the two standards of when we simply remove somebody and when we remove somebody to face persecution? Yes, there is, Judge Reinhart. And it's not only a question of – I would say there are three levels of differences here, responding to your question, Judge Smith. There's a question of whether or not someone should be admitted to the United States as a nonimmigrant or an immigrant. Those are high standards. There are questions in regard to under what circumstances someone is to be deported or expelled from the United States. And then there's really a third situation presented here in the withholding of removal context, which is the last ditch form of relief implicated in implementing our obligations under the U.N. refugee protocol that says a person should not be returned to their country of origin if it is more likely than not that their life or freedom is going to be threatened. So this bar is only going to be applied in that final situation where someone is facing expulsion, where an immigration judge has found it is more likely than not they're going to be persecuted. So you're suggesting then that our decision, Miguel Miguel v. Gonzalez, which was a 2007 decision where it says that the handbook providing significant guidance in construing the protocol is not binding on the AG, the BIA, or the United States courts, citing Aguirre 526 U.S. at 427, is not something that we should follow? The handbook is not binding on this court. It is not binding on the Board of Immigration Appeals. The Supreme Court has made that clear in Aguirre, Aguirre. The Supreme Court has also made clear that the handbook is a relevant and helpful guide, but that it is not binding. So in that context, sorry. Doesn't Frantescue state the standard that you're urging? In regard to serious nonpolitical crime being more serious, it does. And that is one of the reasons why we believe if the statute is ambiguous, that is one of the reasons we think the analysis of NAM should not be given deference because it is unreasonable in light of the board's previous precedents. So if Frantescue is a board precedent, I'm not sure I understand. Why can't the board take a different tack? I mean, you know, in NAM. NAM is a late, subsequent board case. Insofar as the two are inconsistent, why wouldn't, if they're inconsistent, why wouldn't NAM supersede Frantescue to that extent? NAM, in my understanding, in my recollection, Your Honor, was not addressing the specific issue of whether or not a serious nonpolitical crime is more serious than a particularly serious crime. Counsel, I'm interested to know whether you think that a matter of NAM is entitled to Chevron deference. Well, we believe it is not entitled to Chevron deference for a variety of reasons that I've been trying to address. One of the reasons I don't think I've mentioned, which we've obviously addressed in our brief, is we think the board itself made clear that it was not interpreting a gap or an ambiguity in the statute. As a matter of fact,  and followed the Seventh Circuit precedent in Ali. That's exactly what it did. So under the circumstances, if we don't give a matter of NAM Chevron deference, what impact does that have on the reasoning of the court here? Well, we think then the issue is squarely before the court in regard to whether or not a non-aggravated felony conviction should constitute under any circumstance a particularly serious crime for withholding purposes and whether or not it should, well, NAM did not address the asylum context. That was not before the court. Would we, consistent with other cases outside the immigration context, if we thought that the BIA was looking at this on a plain meaning, but we thought the statute is ambiguous, would we then remand to the BIA? If the court were to find that the statute was ambiguous, yes, I think the court would be required to remand to the BIA to exercise its agency expertise under, as the Supreme Court has indicated in Ventura, I believe it is, the court would be required to give the BIA the first option. So it's only if we thought it was not ambiguous and we thought that the BIA interpreted it as plain meaning that we would then straight up interpret it. Is that right? Yes, Your Honor. And the court clearly is, does on a de novo basis, review the question of whether or not the statute is ambiguous or is not ambiguous. That is not something that the board determines. If we thought the statute was ambiguous, but the BIA had already thought that it was plain, why would we remand to the board for an exercise of its discretion? It's already told us what it thought the statute was plainly meant. I think... It's kind of an empty act, isn't it? Well, if the court determines that the statute is ambiguous, my understanding is under INS Ventura, the agency would be required to exercise its expertise in interpreting the statute. But it really did. I mean, I have the same problem. And I suspect that the board looks at the thing and say, well, this is what we think the statute means. And then we say, well, you know, it's ambiguous. And do we have to send it back? Then the board looks at it again, says, well, now we understand it's ambiguous. And we still think that's what the statute means. I understand the Supreme Court precedent that said when the board considers itself bound by a Supreme Court decision and can't even think about what the statute means, just has to follow a decision. And then a court comes along and says, well, that's not correct. It's ambiguous. It's not really controlled. Then you send it back. But I do have some problems seeing why you would send it back. I take Your Honor's point, and that was obviously, I believe, the issue in Ngozi. And the board did believe it was bound by case law. And so that is a different situation from the situation that I'm suggesting. You've got about four minutes left. I will reserve my remaining time, then. Thank you. We'll hear from the government. Good morning, Your Honors. I'm Erica Miles, Attorney General Holder. Unless you have any questions for the government about the court's jurisdiction in this case, I'll proceed to the other issues that you've already been discussing. The government's position is that the withholding of removal statute is silent and ambiguous, and the board rendered a decision that was a reasonable interpretation in matter of NAM that a crime does not need to be an aggravated felony in order for it to constitute a particularly serious crime in the withholding of removal context. Ms. Miles, as you know, the Third Circuit in Alaca concluded that the second sentence of the statute authorizing the Attorney General to determine when a conviction is particularly serious is clearly tied to the first, relates back to the previous sentence, and the like. It's not alone. We have three cases, Villegas v. Mukasey, Afridi v. Gonzalez, and Singh v. Ashcroft, where we've followed the same approach in dicta three times. Should that have any impact on our analysis as to whether this statute is ambiguous? No, and I'll address your questions regarding the Ninth Circuit decisions first and then Alaca. As for the Ninth Circuit decisions, in those cases, in all three cases, the crime involved was an aggravated felony. So this court had no need at any point to go beyond a determination of whether or not an aggravated felony offense constituted a particularly serious crime. Let me just interrupt for this point. Does the government agree that the crime involved must have been determined to be an aggravated felony in order to fall within your analysis? No, it didn't need to be determined to be an aggravated felony, but in those cases, it was an aggravated felony. So this very question that the Court's considering today was not before those courts, whether or not a non-aggravated felony could be determined. So those cases really don't have much bearing or govern. So even though they reasoned the same way as Alaca in terms of saying that the second sentence relates back to the first sentence, you feel it has no bearing at all because the crimes involved were determined to be aggravated felonies? Yes, but also going to Judge Bybee's point, the fact that there is this paragraph with these two sentences that we're discussing, well, actually three, but the two that we're discussing, that in no way still limits. We have a general rule here that the Attorney General has the authority to decide whether or not an alien's been convicted of a particularly serious crime. That's the general rule in withholding a removal statute. And then you have this additional paragraph that then adds a limit to that authority, creating a per se category, and then a second sentence that just clarifies that all aggravated felonies do not have to have a five-year sentence in order to be considered. I mean, going back to that discussion again, as Judge Bybee was pointing out, there is a much simpler way for Congress to phrase that paragraph if it wanted to say, for Provision 2, the particularly serious crime provision, we interpret particularly serious crime to only mean that aggravated felonies can constitute. I mean, there are so many easier ways of stating the proposition that Mr. Delgado is trying to get this court to urge, but Congress didn't phrase it in that way. Instead, Congress left the general rule intact, and the BIA has a longstanding history of interpreting crimes, aggravated felony and non-aggravated felony, as particularly serious. And Congress had this backdrop through the many, many changes over the years when it made amendments to the statutes. Just to change the context slightly, do you agree that in the asylum context, that the Attorney General is limited to making determinations of whether a crime is particularly serious by issuing regulations? No, we do not agree with that. And if you'd like me to answer the ALACA question, I'll come back to that. But I'll answer your asylum question first. The asylum statute is even clearer in the sense that it states that it has a general rule and it has special rules. And if you look at the structure of the asylum statute at 1158B, under Provision 2, there are exceptions. Provision A, in general, and that's where we have the paragraph that if the Attorney General determines that an alien's been convicted of a particularly serious crime, then he's ineligible for asylum. So that's the in general rule. And then you have subpart B, special rules. Romanat 1, that's where it says if you're convicted of an aggravated felony, you're absolutely barred. That's a per se category. Romanat 2 talks about other offenses. The Attorney General may designate by resignation, by regulation, offenses that will be considered to be a crime. Why would we need that provision? You told us just a minute ago that the general rule is that the Attorney General has authority to determine what is a particularly serious crime. Sure. And the general rule for administrative law for Chenery is that you proceed either by adjudication or by rulemaking. Yes. The Attorney General has already been given general authority in the INA to proceed by rulemaking. So what on earth does this add? This adds that the Attorney General has permission, sort of like the aggravated felony category. But he has permission. It's just clarifying. It's not just clarifying. We don't need that. In other words, we really should just excise it out in your view. It just said he may designate offenses. That's your reading, correct? Yes. It could designate entire classes. Whereas the first provision, the general rule, is for individual case-by-case determination. But why would it say regular? In other words, to come to your view, we just have to say by regulation, was either dropped in there accidentally or it's meaningless, both of which would go against all statutory construction. Is there any rule of statutory construction that would permit us to basically just put a delete sign on that? I would submit that it's not meaningless and that this does have a separate purpose. And that purpose is whereas in the general rule provision, again, it's an individual totality of the circumstances, discretionary determination. At each and every case before the board, it looks at the offense, it looks at the nature, it looks at the circumstances that occurred, whether or not there's a danger to the community element, et cetera, on a case-by-case basis for a DUI crime committed by Mr. Delgado versus the crime committed by another individual. But for permission here in the special rule to designate by regulation, that gives the attorney general the authority to take a class of cases, just like the provision before it. The question I'm asking is why isn't the government's position that this is duplicative? Well, a part of it has to do with the fact that the asylum statute kind of came together into this structure in a different way than the withholding statute. And the particularly serious crime provision until 1996 was actually a regulation itself. So it's perhaps an indication that even though the aggravated felony bar has existed for many more years in the statute, the particularly serious crime regulation was enacted into the statute, recognizing that the board undertook a case-by-case approach per its previous regulation. It's now in the statute. And then they add in the special rule that says, hey, you still have the ability to pass regulations to take an entire class of case that doesn't undertake the totality of the circumstances of an individual crime. Instead, it takes category classes of offenses, and you can designate that and forego. So like you could say a DUI with a prior injury or something like that. Exactly. The board has the authority, through regular review. As opposed to looking individually at Mr. Delgado and saying, okay, you had four. Your passenger when you got serious injuries on this one, you were going 85 miles an hour on the subsequent one, and these were the dates. Yes. So you could say, okay, a category. If you have a DUI and you have a prior where there was an injury, you don't have to do more? They would have the ability by regulation to undertake those regular rulemaking procedures and through notice and comment, all that. But they could pass a regulation that classifies that type of DUI. Do you agree, the three-judge panel, even though obviously by going on bonk, that's gone. But do you agree with the analysis and the three-judge panel opinion on that particular? We disagree with the analysis by the three-judge panel below. Our position is that the board did not abuse its discretion. Okay. But parts of it, okay, you agree that we should overrule METSOC? Yes. On the narrow issue. On the narrow issue. Then after that, you think they abused their discretion by saying that the DUIs were not particularly serious, right? We think there's no abuse of discretion. Well, okay, the court was wrong when they said that there was an abuse of discretion. What else do you disagree with on the three-judge panel? Okay, so we agree with the legal holdings that an offense in both the asylum and withholding context need not be an aggravated felony and that the board has authority on an individual basis to make that determination in the asylum context. We agree with that. What we disagree with in the panel decision is it's not at standard of review. We agree that it applies the abuse of discretion standard of review, but we think that the court did not actually then go and apply that. Our view, and we filed a panel rehearing petition based on this, our view is that the panel below did not actually accord Chevron deference to the board's longstanding articulated standards of how to determine a crime as particularly serious. And what this court took into consideration were factors that the board has never adopted or articulated in its precedent decisions as to how to make these decisions. This court incorporated it must be more serious than capital or grave, which was extracted from a UNHCR standard. The board has never adopted this capital or grave standard. The board has never even said that. You're urging, again, that the abuse of discretion be tested by the Frantescu standards. Yes. But Frantescu makes that same comment that the crime, particularly serious crime, is more serious than a serious nonpolitical crime. The board in Frantescu makes that comment, yes. But this court extended that. This court pulled in the capital or grave standard, whereas while the board in Frantescu recognized that UNHCR guidelines established capital or grave for the serious nonpolitical crime, the board did not make that leap. The board did not say a serious nonpolitical crime must be capital or grave. It never adopted that. So that particular language or standard is not within the board's decision making. I keep talking about serious crimes. Doesn't the word particularly mean something? It means not just a serious crime, but an especially serious crime? The board has never defined it. I'm not going to take. But doesn't it have some meaning, whether the board's defined it or not? The term itself, particularly serious crime, has meaning. As the board has stated, it depends on the nature of the offense itself. But does it mean that it's more than a serious crime? It probably means more than a serious crime. But the board has not set it out in those terms. If the board hasn't set it out, then don't we have to say that it's not just a serious crime? It's a particularly serious? It's a limited category of serious crimes? This is for within the board's purview to make determinations on how to define the term. We have a case. Don't we have to apply the statute? You apply the statute as it's been interpreted by the board. And the board has an interpretation that it set forth in matter of frantescu, and it's been refining all along up until matter of NAM that is now before this court. And that refined standard. You're saying it has not defined what a particularly serious crime is? There's no definition, but there's a standard for how the board determines what is a particularly serious crime. In deciding whether it is a particularly serious crime, do we look at the category of crime, which is drug driving in this case, or would we look at the crime as committed by this particular petitioner? As the board has set forth what the board looks at and this court considers for abuse of discretion, the board looks to a myriad of factors such as the nature of the crime itself, that this is a drug driving offense, the totality of the circumstances involved, was there harm to the community, and also the potential. The most important here, and it's in the statutory language itself, that a particularly serious crime means it's a danger to the community. So the board looks to whether the nature of the offense is a danger to the community. I'm just looking at the statute. And if you look at B, little i, the phrase that uses the word particularly serious crime, the alien having been convicted by a final judgment of a particularly serious crime, is a danger to the community. To me, I could see that the phrase particularly serious crime would be a description of the kind of crime it is. Or it could be a description of the particular way in which the crime was committed by this petitioner. So which of those do we look to in determining whether the board abuses discretion? Do we look at the fact that it's a drug driving offense, or do we look at the specific way in which the offense was committed? You look to whether or not the board applied its own articulated standards and whether or not what the board determined was a reasonable or an arbitrary determination. And here the board considered the nature of the offense, that it is sort of the quintessential danger to the community offense, that every time a person who is that inebriated gets behind the wheel of a car is driving a weapon, and any innocent person around could be harmed. The board mentioned that tens of thousands of times. That inebriated sounds to me like you're talking about the specific way in which it can be. No, I'm only meeting the statutory for driving under the influence number. I think in California it's .08 blood level. So if you're just a pitch above that, that does not strike me. He was convicted. It can be committed in a way that's not particularly serious. As I was saying, the board looked to the nature of the offense itself is inherently very dangerous to the community. The board also looked to other circumstances. In 1992, his first conviction that Homeland Security became aware of, he hit another car, he injured himself, and he injured his passenger. It's unknown what happened to the other driver. And then that felony DUI offense was the predicate for his 2000 offense that made that offense in 2000. None of that matters if you look at the statutory language and what you're supposed to look at is the category of crime. We have the boards. The statute has been interpreted. Look at the statute. It could be just said, you know, it's pickpocketing or the category of drunk driving or the category of petty theft. If you look at the crime as a category rather than a particular way in which it is committed, you get quite a different result. Well, the way the statute is drafted is that the board has discretion to look at the crime in the individual circumstances under which it was committed. Isn't that the answer from Frontescu? I mean, they basically say you look at the nature of the crime itself and then you look at the particular crime in this case and how it was committed. Yes. And then you see whether that person, based on all this, might be dangerous. So it's both a category and a particular circumstances analysis. Yeah. The board sort of has a dual analysis that first you look at the nature of the crime and is it itself on its face a particularly serious crime. And if it determines that it is, the inquiry ends there. This is laid out in Frontescu and it's been applied over the years. But then there's the second category of crimes where you look at the nature and it's possible that it's a particularly serious crime, not necessarily on the face of the statute itself. So then the board undertakes this inquiry as to looking at the circumstances under which the offenses happened and the danger to the community assessment. So the board has has different phases under which it undertakes its analysis. So here it was. It was not on its face particularly serious. So it proceeded to looking at the circumstances of Mr. Delgado's offense. Well, Frontescu says that that in most cases, the record in most proceedings will have to be analyzed on a case by case basis, which suggests that they will very more often than not, they'll have to go into the second analyzing individual. Well, you have to keep in mind that Frontescu is a rather old case and this is before the aggravated. You shouldn't be fighting him if it says what you were trying to say. No, it does. I'm just trying to get at the point that there are actually I mean, in most circumstances, a crime is going to be an aggravated felony. So the inquiry can end there because that could be by its nature on its face. And then you say in most cases, I guess they're recognizing your point. In some cases, it's clear. Yes. If it's first degree murder, maybe you don't have to go in private. But yes, but you have a myriad of types of cases that are out there that the board every day is faced with and needs to determine the degree of danger to the community and the degree of severity of the crime. And the board is that Congress has given the board that authority. That is the general rule in both the withholding and the asylum statutes. And the board did apply its articulated standards. It's been applying, applying for many years. In this case, it looked at Mr. Mr. Delgado's history of drunk driving, the fact that he committed again after he had been placed in removal proceedings and risked removal based on a 2000 conviction. He was convicted again in 2002 of felony drunk driving. And then back in 2000, the circumstances where he was also driving 85 miles an hour and weaving on the road. And he had his prior convictions. So the immigration judge applied its standards. He stated that he was applying his standards as outlined in Francesco. And there is no abuse of discretion here. But more. I just want to be sure I understand your answer, though, to Judge Canby's question. What the government's advocating here requires us to determine in the case of a DUI on a case by case basis, whether it's a particularly serious crime. Is that your position? Yes, that's what the board did here. The board determined that. I mean, going forward, I mean, we're going to have a ruling out of this. And so until the board classifies an entire class of crimes, the board does undertake a case by case. We have we have a board decision for just to give you an example on drug trafficking and matter of while. And the board in that in that decision said that presumptively drug trafficking offenses are particularly serious. And then the board provided steps and an analysis as to how perhaps the alien could overcome that presumption. We're basically entering into a brave new world on the DUI front. We have it with the drugs all the time and all the different statutes that we have to construe to see where they fit. But if this if it had to be an aggravated felony, that would solve the problem, would it not? Only if the board said so, because for asylum, yes. Assuming that the that the board decisions you cite are entitled to Chevron deference. If they are not, then don't we get back to the point? If we can screw the statute to require that the particularly serious crime be an aggravated felony, then unless it is so classified, we don't get into this case by case determination, which could involve literally thousands of immigrants or aliens. That's correct. If the board was looking at an aggravated felony, then then this would not require this abuse of discretion review by this court. But here, however, however, even in those circumstances, it is certainly true that we should not get involved unless it's an abuse of discretion. Correct. Correct. As this is that that's a similar line of thinking as the court in the Fourth Circuit in Gao mentioned that this type of test, the court should not lightly overturn for abuse of discretion the board's determination, because this is a totality of the circumstances type of determination. Counsel, I noticed that Francesco makes a distinction between crimes against property and crimes against persons, which are categorized as particularly serious crimes. So as we look at this particular case, the fact that there was bodily injury in one of the DUI convictions makes it a crime against persons. Is that is that part of the analysis? That's that's certainly part of the analysis. Harm, actual harm. And more importantly, the risk of harm to individuals in society. This danger to the community element is a very important aspect. However, before every time you get into a car with point nine instead of a point eight, there's that kind of a risk of danger. Would you suggest that every time someone was arrested for drunk driving because he was over the limit, that then he could be deported to face persecution? I don't I don't have that. The board didn't have that circumstance in front of it. And that's not here. I don't know how the board would go out on a single would come out on a single offense. And if if the individual didn't hurt anybody ever and if the individual had on the lower and lower blood blood alcohol level for for a conviction, I'm not sure how that would be. But here we have Mr. Delgado's repeated. Now, we're looking for the rule and judges suggesting that this is a serious offense. And you suggested every time you get into a car, there's a risk. Every time you get into a car and you can point nine. That's not necessarily what he blew. We don't have that. No, I'm not saying this case is asking you for a hypothetical because of a rule that we're going to. Well, and I'm just asking whether what you said earlier and what now this isn't the property. But every time you get into a car and with the risk that you talk about, there is a risk to the community. Anytime someone is intoxicated, that they get behind the wheel of a car. It's it's sort of it's justified, not just not excluding somebody or deporting somebody, but somebody who has been persecuted and is threatened with the risk to his life or to his physical welfare. That that would be sufficient reason. Judge Reinhard, that is. I mean, the United States does have an obligation, especially with the withholding of removal statute. But there is this bar to withholding of removal statute. And the general rule is that the board has the discretionary authority to determine what is particularly serious. And the bottom line here is that the United States shouldn't have to put to jeopardize its community at large for the sake of protecting one individual. And part of that analysis and part of that balance that's built into its obligation and the statute here is looking at the circumstances of the individual. And here, Mr. Delgado, he he was placed into proceedings in 2000 based on a third DUI conviction. That didn't stop him. The threat of deportation didn't stop him from committing the crime again. He he was convicted again in 2002. This is a probation violation. And it was after he was in removal proceedings. I was trying to see what kind of a rule we would establish. Well, here I mean, the board hasn't articulated an overarching rule as to DUI. It articulated its ruling in this case on Mr. Delgado. And under the totality of the circumstances of his number of convictions, his recidivism, the severity of the offenses and the danger to the community aspect, the board determined that he had convicted had been convicted of a particularly serious crime. Barring that under then to a two little eyes. That's the determination in the asylum statute. Then the alien having been convicted by final judgment. Yes. Yes. And then you're saying there's been no categorical placement of DUIs as particularly serious. The board didn't state that rule. And this isn't a precedent decision by the board. Mr. Delgado's decision below is not a board precedent. It's Mr. Delgado's ruling. So he just falls in this case, not in a category and not in a narrow category of DUIs, but just the particularly serious crime and the board's evaluation of that based on the IJ. Is that right? Yes. Under that part of the statute. Yes. It's not a per se category. It's not a regulation. The board exercise and both the withholding and asylum statutes, the board exercise its broad authority under the general rule of both of the statutes. If this were held not to be a bar, then the crimes would be committed when decided. Asylum along with Wade, along with the other discretionary factors. Yes. Yes. This the board would have the authority if you determined that it needed to be an aggravated felony. For example, the board could still consider the DUI offenses under its general discretionary authority for asylum, but not not for the only question is whether this has to be an absolute bar or whether it may be considered. And the board may decide not to grant asylum and its discretionary. No, this is a statutory bar. If it were not statutory, if it were not a statutory, then the board could still consider. Yes. Yes. And base its denial after weighing the other factors for asylum. Yes. For withholding. Now, may I ask you a question, Ms. Miles? What is your position as to the continued vitality of Entrescu? Are you saying that it's been overruled or are you putting some particular gloss on its language? Where are we with that? Entrescu has not been overruled. Entrescu is still the underlying rule. It's just been refined. Or as this court has used, it's evolved over the years. But it's still the baseline. But a consideration such as the length of sentence, for example, the board has since decided that that is still a consideration, but it shouldn't be weighed as heavily because other factors go into sentencing. But as to the question as to whether a DUI is a crime more serious than a serious nonpolitical crime, that language is still valid. The board stated that. I would purport that that's not its ruling. That its ruling is these are the factors you consider. But in any event, a DUI could be considered as more serious in the sense of the frequency that it happens. In a grave crime? Capital of grave has never been adopted by the board. That's not a standard the board considers. So I would not answer that question because I don't know how the board would answer it. Counsel, we have a brief from the Office of the United Nations High Commissioner for Refugees, the first time I've seen an international organization file a brief with our court. Do you have anything to say about it? Any comments you want to make? Our comments are that the issue that the UNHCR is raising, that issue has never been presented before the court in this case, and it is waived. And Mr. Delgado himself stated in his very recent supplemental reply brief that he didn't raise the issue, and he's not arguing it. Counsel, if I understand your position, it's not whether DUI is a particularly serious crime. It's whether this particular DUI was a particularly serious crime. Yes. For the merits question in this case, whether or not the board abuses discretion, yes, that is the case. Thank you. Okay. Thank you. Two brief comments. One, in regard to the definition of particularly serious crime, the Tenth Circuit in its NAM decision, Judge Henry in his concurring opinion, while he did in the end give deference to the board's determination in NAM, Judge Henry stated that the BIA's changing and inconsistent constructions of the particularly serious crime definition threatened the reasonableness of the BIA's interpretations. And so, again, we acknowledge that there is some difficulty with consistency on the part of the board. In regard to our argument that the particularly serious crime definition, if it's going to extend to a non-aggravated felony in the asylum context, requires the promulgation of a regulation, as we believe the plain reading of the statute indicates. We think it's important to look to the absence of a similar provision in the withholding context. If, as the government is saying, the statutory provision in the asylum context is a clarifying provision which allows the Attorney General to promulgate regulations to identify categorical grounds of regulations, of crimes that might constitute particularly serious crimes, that would mean, given its absence in the withholding context, the Attorney General lacks the authority to promulgate such regulations. And we don't think the Attorney General lacks that authority. The Attorney General has the authority generally under 8 U.S.C. 1103 to promulgate regulations. So the court has to look at this additional language in the asylum context and give it some meaning. And that meaning, in our view, is that it identifies a way in which, the only way in which the court, excuse me, the only way in which the Attorney General can expand the definition of a particularly serious crime in the asylum context to non-aggravated felonies. It must do so by regulation. We have two different statutory structures in the withholding context and in the asylum context, and the court has to give meaning, in our view, to those two very different structures. Okay. Thank you very much. Thank you. Case is argued.
judges: En Banc Before: Kozinski, Canby, Reinhardt, O'scannlain, McKeown, Fisher, Bybee, Callahan, Bea, M Smith, Nr Smith, Cjj